Morris OBIN, Appellant,

v.

DISTRICT NO. 9 OF THE INTERNA-
TIONAL ASSOCIATION OF MACHIN-
ISTS AND AEROSPACE WORKERS;
Anheuser-Busch, Inc., Appellees.

No. 80-1315.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1980.

Decided June 11, 1981.

Jerome A. Diekemper, argued, Diekemper, Hammond & Shinners, St. Louis, Mo., for appellee, Dist. No. 9.

---

* EARL R. LARSON, United States Senior District Judge, District of Minnesota, sitting by designation.

Gerald Kretmar, argued, Levin & Weinhaus, St. Louis, Mo., for plaintiff-appellant.

Dennis C. Donnelly, argued, Rebecca R. Kionka, Thomas K. O'Shaughnessy, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for appellee, Anheuser-Busch, Inc.

Before LAY, Chief Judge; BRIGHT, Circuit Judge; and LARSON, Senior District Judge.*

BRIGHT, Circuit Judge.

This appeal presents two principal questions for review: (1) whether the ten-day period for serving motions to alter or amend a judgment, Fed.R.Civ.P. 59(e), applies to a postjudgment motion for an award of attorney's fees; and (2) whether the district court abused its discretion in this case by assessing attorney's fees against a discharged employee who unsuccessfully sought monetary and injunctive relief from his employer for breach of contract, from his union for unfair representation, and from both for religious discrimination. We conclude that a motion for assessment of attorney's fees raises a collateral and independent claim and, accordingly, would not be governed by the ten-day limitation prescribed in Rule 59(e) for motions to alter or amend a judgment. As the claims for fees were timely asserted, we proceed to the second question and conclude that the district court erred in awarding attorney's fees to the employer and erred in part in granting fees to the union.

I. *Background.*

Following his discharge for unauthorized beer drinking and use of abusive or profane language towards a supervisor, Morris Obin brought this action in federal district court against his employer, Anheuser-Busch, Inc. (the Company), and his local union, District No. 9 of the International Association of Machinists and Aerospace Workers (District No. 9 or the Union). Count I of each com-

plaint charged the Company and Union with religious discrimination under section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f) (1976). Count II of the complaint against Anheuser-Busch alleged that the Company had breached its collective bargaining agreement with the Union by discharging Obin without just cause, in violation of section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976). Count II against District No. 9 alleged that the Union had breached its common-law duty of fair representation by failing to fully pursue his unlawful discharge grievance against the Company.

The district court consolidated the complaints for trial. Count I of each action was tried to the district judge, who determined that Obin had failed to establish a prima facie case of religious discrimination against either Anheuser-Busch or District No. 9. Count II was tried simultaneously to a jury, which returned verdicts in favor of the Company and the Union. The district court entered judgment in both actions on December 21, 1979.

On January 2, 1980, District No. 9 moved that the court allow the Union reasonable attorney's fees for its defense of the action. One week later, Anheuser-Busch filed a similar motion seeking recovery of the fees it incurred in defending the suit. Both defendants asserted their right to recovery on the attorney's fees provision of Title VII, 42 U.S.C. § 2000e–5(k) (1976), and the court's inherent power to allow fees in cases brought or maintained in bad faith.

By order of March 4, 1980, as supplemented on April 9, the district court granted both motions. Finding that Obin's claims were frivolous and pursued in bad faith, the court ordered Obin to pay costs and fees of $20,075.89 to the Union and $25,695.65 to the Company. *Obin v. District No. 9, International Association of Machinists and Aerospace Workers*, 487 F.Supp. 368 (E.D.Mo.1980).

Obin appeals from both the judgment on the merits, alleging error on various evidentiary rulings at trial, and the award of costs and attorney's fees to Anheuser-Busch and District No. 9. Having carefully reviewed the evidentiary rulings in light of the record and the parties' arguments, we see no error or abuse of discretion by the district court in these rulings and, therefore, affirm the judgment on the merits. We focus at length, however, on what the parties concede to be the major issue on appeal: whether the district court properly awarded attorney's fees to either the Company or the Union for defending the Title VII or section 301/unfair representation causes of action. We conclude that the unusual facts and circumstances of this litigation warrant an allowance of attorney's fees, but only to the Union on Obin's Title VII claim. Accordingly, we reverse the award of attorney's fees as assessed by the district court and remand the case for an appropriately reduced allowance of fees to the Union. We affirm on all other issues.[1]

II. *Availability of Court-Awarded Attorney's Fees.*

In *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court reaffirmed the traditional "American rule" that the prevailing party in federal litigation may not ordinarily recover attorney's fees in the absence of express statutory authorization.[2] The Court, however, also reaffirmed an exception to this rule "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 258–59, 95 S.Ct. at 1622, quoting *F. D. Rich Co., Inc. v. United States*

---

1. Obin appeals the district court's award of certain trial costs to the Company and the Union. The award of these costs, however, generally rests within the sound discretion of the district court, and we see no reason to disturb the court's exercise of its discretion in this case.

2. For two lists of statutes authorizing the award of attorney's fees in federal litigation, see *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 415–16 nn.5–7, 98 S.Ct. 694, 697 nn. 5–7, 54 L.Ed.2d 648 (1978), and *Alyeska Pipeline Service Co. v. Wilderness Society, supra*, 421 U.S. at 260–61 n.33, 95 S.Ct. at 1623 n.33.

*ex rel. Industrial Lumber, Inc.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

Accordingly, this court has recognized post-*Alyeska* that an award of attorney's fees may be proper in an action under section 301 for breach of contract or in a suit for breach of the duty of fair representation, even in the absence of express statutory authorization, if the losing party has acted in bad faith. *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616 (8th Cir. 1978) (action by employees against employer and union for breach of collective bargaining agreement and duty of fair representation); *General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Co.*, 535 F.2d 1072 (8th Cir. 1976) (action by union to require arbitration of grievance under collective bargaining provision); *Richardson v. Communication Workers of America*, 530 F.2d 126 (8th Cir.) (action by employee against company, international, and local for wrongful discharge), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). *See* R. Gorman, *Basic Text on Labor Law* 724 (West 1976).

In a Title VII action, however, a different standard governs the allowance of attorney's fees to a prevailing litigant. Section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, provides:

> In any action or proceeding under this [title] the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person. [42 U.S.C. § 2000e–5(k) (1976).]

In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court interpreted this provision to permit an award of attorney's fees to a prevailing defendant only if "a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422, 98 S.Ct. at 701.

"To the extent that abstract words can deal with concrete cases," *id.* at 421, 98 S.Ct. at 700, the Court attempted to explain this standard by discussing the criteria previously adopted by two courts of appeals for awarding attorney's fees to defendants in Title VII actions. Both the Second and Third Circuits had invoked the terms "frivolous, meritless, or vexatious" to describe suits in which the defendant might recover fees. *See Carrion v. Yeshiva University*, 535 F.2d 722, 727 (2d Cir. 1976) ("unreasonable, frivolous, meritless or vexatious"); *United Steel Corp. v. United States*, 519 F.2d 359, 363 (3d Cir. 1975) ("unfounded, meritless, frivolous or vexatiously brought"). In evaluating these criteria, the Supreme Court carefully pointed out

> that the term "meritless" is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case, and that the term "vexatious" in no way implies that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him. [*Christiansburg Garment Co. v. EEOC, supra*, 434 U.S. at 421, 98 S.Ct. at 700.]

The Court also cautioned at length:

> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. [*Id.* at 421–22, 98 S.Ct. at 700–701.]

In light of these standards, we must determine whether the district court abused its discretion in awarding fees to Anheuser-Busch or District No. 9 under either the attorney's fees provision of Title VII or the bad-faith exception to the American rule.

III. *The Timeliness of Attorney's Fees Claims.*

Before we can address the merits of the district court's award, however, we must determine whether the Company and the Union timely filed their claims for attorney's fees. In light of a recent split among the circuits on the period following entry of judgment on the merits within which such claims must be filed, this court requested supplemental briefs on the question of whether a postjudgment motion for attorney's fees should be treated as a motion to alter or amend a judgment under Rule 59(e)

of the Federal Rules of Civil Procedure.[3] If so treated, the motions filed by the Union and the Company on January 2 and January 9, 1980, respectively, would be untimely, having been served more than ten days after the district court's entry of judgment on December 21, 1979, and the district court would have lacked jurisdiction to make its award of attorney's fees in this case.[4] *See United States v. Robinson,* 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960).

On this issue, Obin advances the First Circuit's position that a motion for attorney's fees under 42 U.S.C. § 1988 must be made within ten days after entry of judgment on the merits of the litigation. *White v. New Hampshire Department of Employment Security,* 629 F.2d 697, 699–700 (1st Cir. 1980), *petition for cert. filed,* —— U.S. ——, 101 S.Ct. 1692, 68 L.Ed.2d 191 (1980).[5]

---

**3.** Rule 59(e) of the Federal Rules of Civil Procedure provides:

> (e) *Motion to Alter or Amend a Judgment.* A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

**4.** In a prior jurisdictional proceeding in this case, a panel of this court considered and upheld the timeliness of Obin's notice of appeal from the district court's judgment in this action. *Obin v. District No. 9 of the International Association of Machinists and Aerospace Workers,* 623 F.2d 521 (8th Cir. 1980). In that proceeding, the Company and the Union argued that Obin's May 5, 1980, notice of appeal was untimely under rule 4(a) of the Federal Rules of Appellate Procedure because it had been filed more than 30 days after the district court entered judgment on the merits of the case on December 21, 1979. In rejecting this argument, the panel ruled that

> when, as in the instant case, a distinct claim for attorneys' fees is made in the pleadings and pursued throughout the case, the judgment is not final until that claim has been decided. [*Id.* at 522, citing *Fulbright v. Brown Group, Inc.,* No. 80–1234 (8th Cir. May 20, 1980) (order); *Yellow Bird v. Barnes,* No. 79–1958 (8th Cir. May 20, 1980) (order).]

Thus, the judgment of December 21, 1979, did not become final for purposes of appeal until April 9 when the district court finally resolved the motions for attorney's fees.

Although the precise issue before the panel concerned the timeliness of appellant's notice of appeal rather than the timeliness of appellees' motions for attorney's fees, the panel's

ruling would seem to govern the outcome of both issues: If attorney's fees constitute part of the final judgment, then by implication, a motion for fees should be governed by those time limitations which apply to a motion to reenter the judgment. That issue, however, was neither briefed nor argued to the panel, and this court has never addressed the attorney's fees issue in terms of the timeliness of a claim for fees. The importance of the timeliness issue, particularly in light of the growing disagreement among the circuits on the question, requires this court to address the issue in depth.

**5.** Although *White* concerned the period of time within which a motion for fees must be filed under the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988 (1976), rather than under Title VII, as is the case before us, the Supreme Court recently ruled in *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), that the standard for determining whether a prevailing defendant may recover fees in a civil rights action does not differ from the standard applicable in a Title VII action.

In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), we held that the defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.,* at 421, 98 S.Ct., at 700. Although arguably a different standard might be applied in a civil rights action under 42 U.S.C. § 1983, we can perceive no reason for

*See Hirschkop v. Snead,* 475 F.Supp. 59, 62 (E.D.Va.1979) (weight of authority favors proposition that motions for fees under section 1988 must be filed within the ten-day period set forth in rule 59(e) for motions to alter or amend a judgment).

Anheuser-Busch and District No. 9, on the other hand, argue for the view first adopted by the Fifth Circuit, and later embraced by the Sixth and Seventh Circuits, that attorney's fees should be characterized as an item of costs, which under the provisions of rules 58 and 54(d),[6] need not be requested within any prescribed time period after entry of judgment on the merits of the litigation. *Jones v. Dealers Tractor and Equipment Co.,* 634 F.2d 180, 181–82 (5th Cir. 1981); *Van Ooteghem v. Gray,* 628 F.2d 488, 496–97 (5th Cir. 1980); *Knighton v. Watkins,* 616 F.2d 795, 797–98 (5th Cir. 1980). *See Johnson v. Snyder,* 639 F.2d 316, 317 (6th Cir. 1981); *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir. 1980). *Cf. Fox v. Parker,* 626 F.2d 351, 352–53 (4th Cir. 1980) (argument urging application of the ten-day provision of Rule 59(e) to motions for attorney's fees rejected as untimely because raised for first time on appeal); *Stacy v. Williams,* 446 F.2d 1366, 1367 (5th Cir. 1971) (motion to amend bill of costs to allow reasonable attorney's fees for opponent's bad-faith pursuit of litigation dismissed as

untimely because filed after ten-day period prescribed in rule 59(e)), *But see* note 5 *supra.*

In *Knighton v. Watkins,* 616 F.2d 795 (5th Cir. 1980), the Fifth Circuit held that an award of attorney's fees under section 1988 should be treated "as part of the costs" taxed after litigation under Rule 54(d) rather than as an element of the judgment on the merits. The court primarily relied on the language of section 1988, which "allow[s] the prevailing party, other than the United States, a reasonable attorney's fee *as part of the costs."* 42 U.S.C. § 1988 (1976) (emphasis added). Because Rule 58 specifically provides that the entry of judgment shall not be delayed for the taxing of costs, and neither Rule 54(d) nor 58 prescribes any period after judgment within which an application for costs must be filed, the Fifth Circuit found no bar to entertaining a fee request filed over two months after the district court entered judgment on the merits.

The First Circuit, however, found this analysis unpersuasive in *White v. New Hampshire Department of Employment Security,* 629 F.2d 697 (1st Cir. 1980). The court concluded that, despite the statutory language describing attorney's fees "as part of the costs," Congress did not intend to

applying a less stringent standard. The plaintiff's action must be meritless in the sense that it is groundless or without foundation. [*Id.,* 101 S.Ct. at 178.]

In our view, if identical standards govern the availability of fee awards under § 1988 and Title VII, then the period of time within which fee claims must be filed under the two statutes should not differ.

Nor do we see any reason to apply a different time limitation to claims for attorney's fees founded on the bad-faith exception to the American rule. We recognize that the Fifth Circuit, in contrast to our view, applies a ten-day limitation to motions for attorney's fees predicated on the court's inherent power to allow fees in instances of bad faith, but imposes no express time limit on motions for fees filed pursuant to § 1988. *Compare Knighton v. Watkins,* 616 F.2d 795, 797–98 (5th Cir. 1980) (§ 1988) *with Stacy v. Williams,* 446 F.2d 1366, 1367 (5th Cir. 1971) (bad-faith exception). We believe, however, that practical considerations argue against this distinction. As illustrated by this case, a prevailing defendant in a multi-

count action including a Title VII claim will file for an award of attorney's fees on both statutory and equitable grounds and similar considerations will underlie the court's determination of whether to allow fees under either or both theories. Thus, similar procedural rules should govern the timeliness of fee applications.

**6.** Rule 58 states in pertinent part:

Entry of the judgment shall not be delayed for the taxing of costs.

Rule 54(d) provides:

(d) *Costs.* Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

include attorney's fees within the specific type of costs recoverable after judgment under Rule 54(d). The court reasoned that

> the costs allowed as of course by Rule 54(d) and detailed in 28 U.S.C. § 1920 are items of a nature very different from the discretionary attorney's fees allowed un-. der the Fees Act. Rule 54(d) envisages the former as capable of being taxed by the clerk on one day's notice. * * * Not so the discretionary award of attorney's fees under section 1988. To calculate such an award, indeed, even to determine whether one should be made at all, the district court must evaluate possibly a dozen diverse factors. * * * Moreover, in determining the propriety and size of a fee award, the district court is generally assisted by submissions from the parties and frequently finds it necessary, as was true here, to hold a hearing on the matter. Appeals often ensue—leading to the prospect of separate fees appeals if final judgment rules are disregarded—as the sizeable sums involved may impose a very substantial and bitterly disputed liability upon the losing party. * * * The considerations making it feasible to treat routine costs as an exception to final judgment rules—the ease of their computation and the fact that they almost never give rise to dispute or appeal—plainly do not apply to section 1988 attorney's fees. * * * The potential amount of the fees award, the varied factors which must be considered by the court in reaching the fees decision, and the crucial role of the judge and parties in reaching that final determination render the fees/costs comparison strained at best. [*Id.* at 702–03 (citations omitted).]

We agree with the First Circuit that the differences between attorney's fees and those items routinely assessed as costs after entry of judgment on the merits make it unlikely that Congress intended that fees be treated as costs for purposes of Rule 54(d). Moreover, the Supreme Court employed similar reasoning in *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), to hold that the term "costs" in 28 U.S.C. § 1927 does not authorize the assessment of attorney's fees against counsel who unreasonably and vexatiously multiplies the proceedings in any case. Section 1927, the Court determined, must be read in conjunction with 28 U.S.C. § 1920, which does not enumerate attorney's fees among the "costs" that ordinarily may be taxed against a losing party under Rule 54(d). Like the Supreme Court in *Roadway Express*, the First Circuit in *White* regarded the items detailed in 28 U.S.C. § 1920 as dispositive of whether attorney's fees could be recovered as "costs" under Rule 54(d).[7] *A fortiori* because the language of section 1988 describing fees as "costs" does not necessarily carry over to other provisions of the United States Code or the Federal Rules, the time provisions of Rules 54(d) and 58 relating to the taxing of costs do not govern the timeliness of claims for attorney's fees.

Nevertheless, our rejection of attorney's fees as costs ordinarily taxable under Rule 54(d) does not require us to accept the *White* court's characterization of attorney's fees as integral to the judgment on the merits and thus subject to the ten-day limitation of Rule 59(e) for serving motions to alter or amend a judgment. Just as an award of attorney's fees differs in nature from the assessment of costs, it also differs from a judgment on the merits of the action. As the Seventh Circuit recently recognized in *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980), a fee determination

---

**7.** We recognize that the Supreme Court in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), attached significance to Congress' characterization of attorney's fees as part of the "costs" allowable under § 1988. That characterization, however, occurred in the context of the Court's conclusion that the eleventh amendment does not bar an award of fees against a state. *Id.* at 693–98, 98 S.Ct. 2574– 2577. The Court's holding that "a federal court may treat a State like any other litigant when it assesses costs," *id.* at 696, 98 S.Ct. at 2576, should not be read as dispositive of whether attorney's fees awarded under § 1988 fall within the specific types of "costs" contemplated by Rules 54(d) and 58. *Accord, White v. New Hampshire Department of Employment Security, supra*, 629 F.2d at 703.

involves an exercise of the district court's judgment requiring an examination of factors beyond the issues decided with the merits of the suit and also different from the largely ministerial task of taxing the traditional items of costs. *See Muscare v. Quinn,* 614 F.2d 577, 579–80 (7th Cir. 1980). Thus the award of attorneys' fees under § 1988 is a decision distinct from the decision on the merits and from the normal taxing of costs. [*Id.* at 33 (requiring a separate notice of appeal from an order awarding attorney's fees after entry of judgment on the merits).]

Furthermore, an award of fees differs in effect from a judgment on the merits. As the Fifth Circuit stated in *Knighton,*

> [A] motion for attorney's fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. [*Knighton v. Watkins, supra,* 616 F.2d at 797.]

The First Circuit dismissed this argument in *White* as "beg[ging] the question to be decided." *White v. New Hampshire Department of Employment Security, supra,* 629 F.2d at 702 n.8. To the extent that a comparison of a fee determination and a judgment on the merits reveals differences in their respective characteristics or effect, however, the comparison may also suggest differences in the manner that claims for attorney's fees and the merits should be treated. In a Title VII action, for example, a plaintiff's ultimate failure to prevail on the merits of the litigation does not entitle the defendant to an award of attorney's fees. Absent additional proof that the plaintiff pursued the litigation in bad faith or brought a frivolous, unreasonable, or groundless action, the prevailing defendant cannot recover attorney's fees in addition to a judgment on the merits. Further, a court in determining the propriety of a fee award in any action must take into consideration not only the merits of the suit, but also several factors entirely distinct from the underlying judgment. Finally, an award of fees generally represents a discretionary rather than a legal judgment by the court.

We note, moreover, that the same characteristics relied upon by the *White* court to distinguish fees from costs also distinguish fees from the merits of an action. Just as fees differ from costs because "the district court must evaluate possibly a dozen diverse factors," *id.* at 702, fees also differ from the merits because of those factors in addition to the merits which the court must examine in determining the propriety and size of a fee award. Similarly, the need for a separate hearing and additional submissions by the parties arises at each step of the litigation, whether the court's task is to determine the merits, tax costs, or award attorney's fees.[8]

---

**8.** The *White* court also cited a third difference between attorney's fees and costs allowed as of course under Rule 54(d): the prospect that separate fee appeals would lead to fragmented and piecemeal appellate review of the same case. *See White v. New Hampshire Department of Employment Security, supra,* 629 F.2d at 702–03. This concern seems to pervade the entire opinion and might be regarded as the primary rationale of the decision. *Id.* at 701 ("appellate tribunals would be constantly vexed by multiple appeals growing out of fragments of the same litigation" if attorney's fees were not resolved before or in the final judgment); *id.* at 704 ("more economical of a court's time to resolve fees requests prior to entry of judgment"). We observe, however, that the First Circuit's treatment of attorney's fees as part of the final judgment may, in other fashions, result in a less economical use of judicial resources. In civil rights actions, for instance, several appealable orders may issue during the course of the litigation. Under the First Circuit's holding in *White,* the parties would need to file fee applications for each order because of the 10-day limitation set forth in Rule 59(e). This procedure, therefore, might also lead to fragmentation of the same litigation on a single issue: the propriety of an award of attorney's fees. In addition, the necessity of filing fee requests within 10 days of the judgment may result in fewer out-of-court settlements because of the difficulty in negotiating a settlement on fees within the 10-day period. Finally, the First Circuit's procedure may force an appeal of the entire case when the sole issue of concern to appellant may be the propriety or size of the attorney's fees award. Separate treatment of the fee issue would allow for the judgment on the merits to be in effect and any remedy operative while the appellate court reviews the award of fees. For these reasons, we believe that the First Circuit's concern over fragmentation and economical use of judicial resources

We conclude, therefore, that a motion for attorney's fees raises a collateral and independent claim, not an application for costs under Rule 54(d) or a matter integral to the merits of the action. This conclusion finds support in the Supreme Court's discussion of attorney's fees in *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). In that case, the Court considered the power of a court to award counsel fees pursuant to an application that had been filed several years after entry of judgment on the merits of the case. The circuit court had determined that the application was untimely under the then-applicable rules of equity, which permitted amendment of a final decree only upon a motion filed during the term of court in which the decree was entered. The Supreme Court, however, squarely rejected this argument:

> Since we view the petition for reimbursement as an independent proceeding supplemental to the original proceeding and not a request for a modification of the original decree, the suggestion of the Circuit Court of Appeals—that it came after the end of the term at which the main decree was entered and therefore too late—falls. [*Id.* at 170, 59 S.Ct. at 781.]

Although the Court reached this decision under the then-existing rules of equity, it noted that the same result would likely follow under the new Federal Rules of Civil Procedure because under the time provisions of Rules 59 and 60 "the passage of the term of court is not material." *Id.* at 169 n.9, 59 S.Ct. at 781 n.9. As Justice Frankfurter wrote on behalf of the Court, a fee request presents a collateral inquiry, "having a distinct and independent character." [9] *Id.* at 169, 59 S.Ct. at 781 (footnote omitted).

Apart from its inconsistency with the Court's pronouncements in *Sprague*, the treatment of an application for attorney's fees as a motion to alter or amend a judgment may also create serious practical problems for counsel and the courts where a possible settlement is negotiated after entry of judgment on the merits. On the one hand, application of the ten-day rule set forth in Rule 59(e) would require counsel during settlement negotiations to discuss simultaneously the substantive issues in the action and the amount of the fee award. This situation may raise a serious ethical concern, as two circuits have cautioned, because counsel would be placed in the position of negotiating a fee ultimately destined for his pocket at the same time that all thoughts ought to be singlemindedly focused on the client's interests.[10] *See Mendoza v. United States*, 623 F.2d 1338, 1352–

---

finds a more appropriate resolution in the procedures for treating attorney's fee claims discussed at pages 583–84 of this opinion, including those procedures pertaining to the consolidation of appeals from the judgment on the merits and the fee determination. *See also Terket v. Lund, supra*, 623 F.2d at 34.

9. The First Circuit in *White* chose to distinguish *Sprague* on the ground that the award of fees in *Sprague* came out of a common fund, which "present[s] a lesser problem than [in § 1988 actions] where allowance of a fee will result in an addition to the amount awarded by judgment." *White v. New Hampshire Department of Employment Security, supra*, 629 F.2d at 703, quoting *Fase v. Seafarers Welfare & Pension Plan*, 589 F.2d 112, 114–15 n.3 (2d Cir. 1978). In our view, however, no serious procedural problems need be encountered by treating claims for attorney's fees as collateral and independent actions. *See* pp. 583–84 *infra*.

10. The *White* court acknowledged this argument, but saw

> [nothing] wrong with requiring the parties to face up to the issue of fees in their settlement negotiations. * * * If agreement as to fees is not easily accomplished, the parties may provide for submission of the entire question of fees to the court; further they may, of course, decide to waive fees altogether. [*White v. New Hampshire Department of Employment Security, supra*, 629 F.2d at 705 (citation omitted).]

In our view, however, it is unrealistic to expect the parties "to waive fees altogether," and it is preferable to avoid any appearance of impropriety even if an agreement on fees may be "easily accomplished." *See Mendoza v. United States, supra*, 623 F.2d at 1352 ("We cannot indiscriminately assume, without more, that the amount of fees have no influence on the ultimate settlement obtained for the class when, along with the substantive remedy issues, it is an active element of negotiations.").

53 (9th Cir. 1980); *Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977); *Regalado v. Johnson*, 79 F.R.D. 447, 451 (N.D.Ill.1978). Alternatively, application of the ten-day rule might result in fewer out-of-court fee settlements because of the difficulty in negotiating an agreement on fees within the ten-day period. *See* note 8 *supra.*

From both a policy and a legal standpoint, therefore, a claim for attorney's fees should be treated as a matter collateral to and independent of the merits of the litigation. Accordingly, the timeliness of a claim for fees should be governed by procedural rules that reflect the collateral and independent nature of the claim rather than by rules, such as the ten-day provision of Rule 59(e), that relate to the merits of the action.

This court has a real concern over fragmentation of appeals. In the interests of orderly and expeditious consideration of all issues arising from a single lawsuit, disputes on appeal over the merits, as well as disputes regarding the allowance of attorney's fees to a prevailing party, should ordinarily be considered and decided by this court in either a single or consolidated appellate proceeding. This court deems it essential that all district courts follow a consistent practice of promptly hearing and deciding attorney's fees claims in civil rights and other cases so that any appeal by an aggrieved party from the allowance or disallowance of fees can be considered by this court together with any appeal taken from a final judgment on the merits.

We observe that the problem of possible piecemeal appeals need not arise where the trial court delays entry of judgment on the merits pending determination of attorney's fee claims and thereafter enters a single final judgment determining all issues. If the trial court enters a separate judgment on the merits and reaches the attorney's fee issue subsequently, we suggest that district courts adopt a uniform rule requiring the filing of a claim for attorney's fees within twenty-one days after entry of judgment. If trial judges will promptly decide these claims, the aggrieved party to that issue may promptly appeal. If an appeal on the merits has already been taken, this court on its own motion or the motion of either party will consolidate the appeals for consideration by this court.

Either alternative will avoid piecemeal consideration of issues arising out of a single lawsuit and, therefore, we request that the district courts of this circuit promptly adopt procedures as suggested in this opinion.

There remains for discussion our existing rulings relating to this court's treatment of attorney's fee matters. In two unpublished orders, *Fulbright v. Brown Group, Inc.*, No. 80–1234 (8th Cir. May 20, 1980), and *Yellow Bird v. Barnes*, No. 79–1958 (8th Cir. May 20, 1980), this court ruled that a district court judgment on the merits which does not dispose of a separate claim for attorney's fees is not final for purposes of appeal. Because these orders were unpublished, they carry no precedential value in this circuit.[11] In a published opinion in a previous proceeding in the present case, however, we recognized the rule of *Fulbright* and *Yellow Bird*. *Obin v. District No. 9 of the International Association of Machinists and Aerospace Workers*, 623 F.2d 521, 522 (8th Cir. 1980) (*Obin I*). *See* note 4 *supra.*

The *Fulbright* and *Yellow Bird* rulings served to clarify that the district courts retained jurisdiction to pass upon a claim for attorney's fees even though one of the parties has filed a notice of appeal on the merits of the litigation. Because we hold in this opinion that a postjudgment motion for attorney's fees raises a collateral and independent claim, there can be no question that the district courts retain jurisdiction to

11. Rule 1 of the Eighth Circuit Rules, Plan for Publication of Opinions, states:

1. It is unnecessary for the Court to write an opinion in every case or to publish every opinion written. The disposition without opinion or the nonpublication of an opinion does not mean that the case is considered unimportant. It does mean that an opinion in the case will not add to the body of law and will not have value as precedent.

rule upon such motions notwithstanding entry of a judgment resolving the merits of the action. For reasons stated in this opinion, therefore, the language of *Obin I* as to the nonfinality of a judgment on the merits when a claim for attorney's fees remains unresolved by the district court ·will no longer be followed.[12] In this case, the determination made in *Obin I* on the basis of *Fulbright* and *Yellow Bird* will bind us only to the extent that we have in this opinion considered and rejected Obin's appeal on the merits.

 In conclusion, we summarize our rulings regarding appealability:

1) A motion for an assessment of attorney's fees raises a collateral and independent claim for determination by the district court. Thus, a judgment on the merits of an action, otherwise final, is final for purposes of appeal notwithstanding that a claim for attorney's fees may remain to be decided.

2) When a final judgment on the merits has been entered in an action in which a claim for attorney's fees remains pending, the time for appeal on the merits runs from the entry of judgment. Subsequent consideration by the district court of the attorney's fees claim does not toll the time for appealing the judgment on the merits.

3) As a collateral and independent claim, a motion for allowance of attorney's fees need not be filed within the ten-day period for motions to alter or amend the judgment on the merits, Fed.R.Civ.P. 59(e). A claim for attorney's fees must be filed, however, within a time to be prescribed by local rule. We suggest that a twenty-one day rule would be appropriate.

4) The district court's order on the claim for attorney's fees is separably appealable as a final judgment and may be consolidated with any pending appeal on the merits of the action. In order to enable the appeals to be consolidated this court requests that

district courts promptly decide attorney's fees issues.

We have observed also that the problem of fragmented appeals in cases calling for an award of attorney's fees may be obviated if trial judges enter but one judgment after determining all issues in a case, including the merits of the action and any claim for attorney's fees.

## IV. The District Court's Award of Attorney's Fees.

### A. The Evidence.

Morris Obin, a sixty-year-old man of the Jewish faith, began his employment with Anheuser-Busch in January of 1959 and worked as a maintenance machinist at its Bevo Bottling Plant until his discharge on May 1, 1975. During that time, he performed excellently as a machinist but compiled one of the worst disciplinary records at the plant, amassing a total of nine weeks and four days of disciplinary suspension in addition to numerous written and verbal reprimands for employee misconduct. In the final nine years of his employment, Obin engaged in at least twenty incidents of misconduct, including violations of work rules, refusals to work, absenteeism, leaving work early, sleeping on the job, insubordination, and assault. On each occasion, Obin was represented by District No. 9 of the International Association of Machinists and Aerospace Workers. As the certified collective bargaining agent of all machinists at the Bevo plant, District No. 9 also processed some six or seven grievances filed by Obin against the Company during his employment. The Union pursued two of these grievances to arbitration, one of which resulted in an award of backpay to Obin and the removal of disciplinary letters from his file.

The events culminating in Obin's discharge arose in part because of the unusual work environment at the Bevo plant. An-

---

12. *Obin I* neither ruled on the timeliness of making post-judgment motions for attorney's fees nor actually considered the merits of Obin's appeal on the merits. *See* note 4 *supra.* Thus, we do not view *Obin I* as requiring an en

banc determination to overrule the panel's statement in *Obin I* that a judgment on the merits does not become final for purposes of appeal when a distinct claim for attorney's fees remains undecided by the district court.

heuser-Busch not only permits its employees to drink beer while on the job, but also provides beer for their consumption in beer coolers located throughout the plant. Plant Rule No. 1, however, makes it a violation for employees to engage in "unauthorized beer drinking." Although the testimony at trial sharply conflicts on what constituted "unauthorized beer drinking" within the meaning and application of the rule, it appears that the Company prohibited drinking on the production lines but that employees often drank there without disciplinary consequences.

On April 28, 1975, James H. Aczinowicz requested a machinist to repair a packing machine on the unit where he worked as a line bottler foreman. Obin responded to the request, carrying an open seven-ounce bottle of beer, and began repairs on the machine. While Obin worked on the unit, Aczinowicz called his maintenance supervisor, Herbert I. Kane, to report Obin for drinking on the production line in violation of Company rules.

When Kane arrived at the production line, he asked Obin, "How many times am I going to have to tell you about this beer drinking on the line?" Obin answered, "You can't tell me nothing. Get a foreman." [13] Obin then headed toward the lunch area, where his foreman told him that Kane wanted to see him in Kane's office. When Obin arrived at Kane's office, he met his shop steward, William Saul, who told Obin that Kane intended to "write him up" for drinking beer on the production line. In the office, Kane indicated that Obin had been drinking on the job again and that the Company would no longer put up with it. Obin denied that he had done anything wrong.

Upon leaving Kane's office, Obin again proceeded toward the lunchroom in, what he admitted to be, a "rather stubborn mood" because "he had been drinking pretty heavily" that day. There, he opened another bottle of beer and resolved to see Aczinowicz about the incident. At the production line, he approached Aczinowicz and said, "You son of a bitch, it's none of your f_____g business if I drink." [14] As he spoke, Obin either intentionally or inadvertently sprayed beer in Aczinowicz's face. Obin then returned to the lunchroom.

After lunch, Obin learned that Kane wanted to see him again in his office and that this time Kane intended to suspend him. Saul again accompanied Obin into Kane's office, where Kane indicated that Obin would be suspended for cussing out and spilling beer on a foreman.

After a preliminary discussion between the Company and Union at which the Union argued for Obin's reinstatement pending resolution of the dispute, the Company, on April 30, discharged Obin. Edward Lenahan, Obin's chief shop steward, advised Obin to file a grievance protesting his discharge and to contact Roy Hawkins, who would represent Obin during the grievance proceedings.

On May 2, Obin and Saul met to fill out the grievance form. On the back of the form, Saul wrote:

This discharge is unnecessary because the foreman did not tell the man he was doing anything wrong. The company is trying to make an example out of this man. I feel this is an unjust decision and this man should not be discharged.

Further proceedings on Obin's grievance did not occur until June 2 because of the vacation-business absence of Union repre-

---

13. Article XVII of the collective bargaining agreement between District No. 9 and Anheuser-Busch provides:

*Instructions from Supervisors*
Maintenance and construction machinists shall not be required to take orders, except in cases of emergency, from anyone other than authorized machinist foremen.
Under this provision, neither Kane, a maintenance supervisor, nor Aczinowicz, a line bottler foreman, could issue an order to Obin except through his machinist foreman.

14. Obin and Aczinowicz disagree on the precise wording of Obin's comment. Obin claims that he said, "[H]ereafter keep your goddamned nose out of my business." In any event, the language constitutes "abusive or profane language towards a supervisor" in violation of Plant Rule No. 5.

sentative Hawkins. At the June 2 meeting with Company officials, however, Hawkins and other Union members argued for Obin's reinstatement. Subsequently, the Company adhered to its decision to discharge Obin and the Union elected not to take Obin's grievance to arbitration because of the weakness of Obin's grievance.

Thereafter, Obin filed a charge of religious discrimination against the Company and the Union with the Equal Employment Opportunity Commission. The EEOC issued Obin a right-to-sue letter, but in it the Commission informed Obin that it had found no reasonable cause to believe that the Company had discharged him or the Union had failed to pursue his unlawful discharge grievance to arbitration because of his religion. Nevertheless, Obin brought this action in federal district court and pursued the suit in spite of warnings by the Company and the Union in their answers to Obin's complaints and by separate letters to Obin's counsel that they believed the allegations to be meritless and that they would seek an award of attorney's fees if he further pressed the case. Neither the Company nor the Union, however, moved for summary judgment on either count of Obin's complaint.

### B. *Discussion.*

On the basis of this evidence, the district court found:

> The record in this case discloses unequivocally that plaintiff's action had no merit and was brought or maintained in bad faith. [*Obin v. District No. 9, International Association of Machinists and Aerospace Workers, supra,* 487 F.Supp. at 369.]

The award of attorney's fees lies within the sound discretion of the district court. *See Cronin v. Sears, Roebuck & Co.,* 588 F.2d 616 (8th Cir. 1978) (award of fees for breach of collective bargaining agreement and duty of fair representation); 42 U.S.C. § 2000e–5(k) (1976) (award of fees in Title VII action). We must decide, therefore, whether the district court abused its discretion in awarding fees to the Company or

the Union for defending against either count in Obin's complaints.

### 1. *Fee award to the Company.*

Because Obin's claim of unlawful discharge stands independent of his religious discrimination charge, we must consider not only whether Obin's charge of religious discrimination was devoid of merit, but also whether he brought or maintained his unlawful discharge action in bad faith.

The only direct evidence of religious discrimination by the Company against Obin stems from a 1974 conversation between Jack Russell, the Company plant manager, and Frank Wesslak, a coworker of Obin. Wesslak testified that during that conversation, Russell referred to Obin as "a god damn sheeney." Wesslak further testified, however, that he never again had heard Russell make a religious slur against Obin, and that he had no reason to believe from this or any other conversation with Russell that Obin's job was in jeopardy because of religious beliefs.

On the basis of Russell's single anti-Semitic remark, we would be reluctant under the circumstances of this case to conclude that the district court abused its discretion in finding Obin's claim of religious discrimination to be frivolous or meritless. Nevertheless, Russell's religious slur does not stand as the only evidence from which religious discrimination might be inferred.

Obin's disciplinary record reveals that he did not become the subject of major disciplinary action by the Company until 1966 when Russell first joined Anheuser-Busch and became Obin's shift supervisor. Indeed, of the nine incidents for which Obin received formal discipline, Russell had either a direct or indirect involvement in all but the first one. Furthermore, after the Union lost an arbitration decision on a grievance filed by Obin less than a year before his ultimate discharge, Russell told Wesslak, who was then Obin's shop steward and charged with Obin's representation, "Not [to] become involved with Maury Obin any further, and [not to] do any more fighting for him." Finally, we note from the

record that only Russell differed from the consensus of both management and labor witnesses at trial that Obin did excellent work as a machinist. Under these circumstances, Obin might reasonably believe that Russell harbored a hostility towards him that ultimately culminated in his discharge.

Further, the record indicates that the Company had not disciplined other employees for the same violation that resulted in Obin's discharge. Some employees testified that they often drank on the production lines without disciplinary consequences. The record also raises some question whether the Company disciplined any employee other than Obin for violation of the drinking rule before it posted additional notices of the Company's beer drinking policy in June and July. Thus, Obin might believe with some justification that the Company dismissed him in May for reasons other than for violating the plant rules. Finally, the record discloses at least one prior instance in which Obin and another employee engaged in identical conduct as part of the same incident but for which Obin received a more severe sanction.

The Company points out, however, that Obin admitted that he had beer on the production line, conceded that he knew it was a violation of plant rules, and acknowledged that he had been warned on previous occasions about having beer on the production lines. Thus, the Company argues, it had good cause under the collective bargaining agreement to discipline Obin. In a discrimination action, however, the issue is not whether an employee's alleged misconduct warranted discipline but whether the employer disciplined the employee because of the misconduct. If religious discrimination plays a role in the decision to discipline an employee, then the employer cannot claim good cause as the basis for imposing discipline.

The Company also argues, with some justification, that Obin's prior disciplinary record could very easily justify any facially different sanction for his violations; thus, Obin's claim of religious discrimination rested upon weak factual underpinnings. For purposes of determining the propriety of an award of attorney's fees to a prevailing defendant in a Title VII action, however, plaintiff's claim must be not only weak but meritless. *See Horner v. Mary Institute*, 613 F.2d 706, 715 (8th Cir. 1980); *Mosby v. Webster College*, 563 F.2d 901, 905 (8th Cir. 1977).

In our view, the coincidence between Obin's disciplinary problems and Russell's arrival at the Company and the superficially different disciplinary treatment of Obin, along with Russell's religious slur, provide some basis for a claim of religious discrimination. It follows, therefore, that the district court erred in awarding the Company attorney's fees for its defense of Obin's Title VII claim.

This evidence, under the circumstances, also convinces us that the district court erroneously found that Obin brought or maintained his unlawful discharge action in subjective bad faith. Because Obin's charges of religious discrimination and unlawful discharge stem from the same incidents, it would be anomalous to conclude that Russell's remarks and the Company's facially discriminatory treatment of his misconduct were sufficient to overcome the meritless and frivolous standard for awarding attorney's fees in a Title VII action, but that essentially the same evidence was insufficient to overcome the more demanding standard of subjective bad faith on the unlawful discharge count of Obin's complaint. Accordingly, the Company was not entitled to its attorney's fees under either theory of recovery.

### 2. *The fee award to the Union.*

As to the Union, however, the record reveals a dearth of evidence to support Obin's Title VII claim. Obin concedes that no officer or agent of District No. 9 spoke to him in a derogatory manner because of his religious beliefs. He would infer discrimination from the Union's "cavalier" treatment of his unlawful discharge grievance against the Company.

Obin complains of the three-week "delay" between the time he filed his grievance and the June 2 meeting at which the grievance was heard, yet he offers no explanation how this delay evinces religious discrimination. The delay, moreover, occurred because of Union representative Hawkins' vacation and attendance at another Union function. Furthermore, Hawkins scheduled the June 2 meeting and referred Obin to a job opening before leaving. Such efforts do not reflect a "cavalier" attitude on the part of Union personnel.

' Even if we grant credence to Obin's version of the facts, we must regard his charge of religious discrimination as frivolous because of his failure to show any connection between the Union's actions and a discriminatory motive. Nothing in the record ties these incidents to religious discrimination by the Union in violation of Title VII. Moreover, we have examined Obin's references to other portions of the record as evidence of discrimination and find these references to be without any real substance.

To sustain the entirety of the district court's award of fees to the Union, however, we must determine that Obin acted in bad faith in prosecuting his duty of fair representation claim. We believe that the award of fees on this ground was erroneous. From Obin's perspective, as we must view the issue of bad faith, the Union had previously defended him in each dispute with management over Company rules and practices and fully processed his prior grievances. As a result, Obin might have expected that the Union would request arbitration on this grievance. Unlike his previous grievances, moreover, the outcome of this one would determine his continued employment with the Company. Under these circumstances, Obin might have believed that the loss of a job would make this grievance all the more important to pursue. Finally, the apparent willingness of Saul, Lenahan, and other Union personnel to ask Hawkins to reconsider his decision not to request arbitration of Obin's unlawful discharge grievance might have strengthened Obin's belief that his claim had some merit.

■ For these reasons, we vacate the district court's award of attorney's fees to District No. 9 and remand the case for an assessment of only those fees incurred by the Union in excess of the amount that it would have incurred had Obin's action consisted solely of the unfair representation claim.[15]

## V. Conclusion.

In summary, we affirm the district court's judgment on the merits of Obin's claims against both the Company and the Union. We reverse the court's award of attorney's fees to Anheuser-Busch. We vacate the award of fees to District No. 9 as assessed by the court and remand that issue for further consideration consistent with this opinion. We affirm on all other issues. Each party shall bear its own costs on appeal.

15. This apportionment of the fees seems particularly appropriate under the circumstances of this case. Certainly by the completion of discovery, it became clear to District No. 9 that Obin could muster no evidence of religious discrimination by the Union. Indeed, counsel for the Union repeatedly suggested to Obin's attorney that he drop the Title VII claim. At that point, the Union should have moved for summary judgment on the Title VII action and thus avoided further legal fees on this claim. Failing to do so, the Union could yet direct its additional pretrial defense efforts exclusively toward the unfair representation claim. Accordingly, the Union should recover only those legal services above and beyond what would have been necessary had the case consisted solely of the unfair representation charge. We think it appropriate to comment further that at the close of discovery, Obin's counsel should have known that he could not prove a case of religious discrimination against the Union and therefore should have advised Obin to dismiss that claim against the Union.