Norma **MARISTUEN,** as Personal Representative of the Estate of Henrietta Sougstad, deceased, Appellee,

v.

**NATIONAL STATES INSURANCE COMPANY, a Missouri Corporation, Appellant.**

No. 94–1825.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1995.

Decided June 16, 1995.

Michael John Morley, Grand Forks, ND, for appellant.

Jay Hamilton Fiedler, Grand Forks, ND, for appellee.

Before BOWMAN, BEAM, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Henrietta Sougstad, who died during the pendency of this lawsuit, brought this action against National States Insurance Company after National denied her request for nursing home benefits under an extended care confinement insurance policy. A jury awarded Norma Maristuen, as the representative of Sougstad's estate, contract damages plus prejudgment interest, bad faith damages in the form of litigation expenses, bad faith damages in the form of attorney fees in an amount to be determined by the court, and punitive damages. The District Court[1] entered judgment on the jury's verdict. The court later calculated the attorney fees award and amended the judgment accordingly. Na-

1. The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

tional moved to vacate the bad faith and punitive damages awards or, alternatively, to reduce the amount of those damages. The District Court denied the motion, and National appeals. Maristuen moved to dismiss the appeal as untimely and also moved for damages and double costs on the ground that National's appeal is frivolous. We deny the motion to dismiss the appeal as untimely, but we affirm the District Court and grant Maristuen's motion for damages and double costs.

## I.

Sougstad purchased a limited benefit extended care confinement insurance policy from National in 1986. At the time of the purchase, Sougstad was eighty-four years old. Under the terms of the policy, if Sougstad had to be confined in an extended care facility following a hospitalization, National agreed to pay $61.50 per day starting on the twenty-first day of confinement and ending on the 100th day of confinement. The maximum policy benefits were $4920. The policy excluded custodial care but did not define that term. North Dakota law, however, defines custodial care as "care which is primarily for the purpose of meeting personal needs without supervision by a registered nurse or licensed practical nurse." N.D.Cent.Code § 26.1–04–03(9)(1) (Michie Supp.1993).

Following a hospitalization for surgery in March 1988, Sougstad was confined to the Northwood Deaconess Hospital Swing Bed Unit where she received skilled nursing care for more than 100 days. Sougstad claimed the full benefits under the policy. After lengthy delays, National took the position that Sougstad received only twelve days of skilled care during the period of coverage. National issued a check for $792 and denied the balance of Sougstad's claim, contending that days thirteen through eighty were merely custodial care and thus not covered under the insurance policy.

Sougstad filed a complaint with the North Dakota Commissioner of Insurance, whose office advised National that the commissioner disagreed with its denial of benefits. After National took no action in response to the commissioner's advice, Sougstad sought legal counsel. She thereafter filed a complaint against National in North Dakota state court alleging that National breached its contract of insurance and breached the covenants of good faith and fair dealing implied in every insurance contract under North Dakota law. In addition to contract and bad faith damages, Sougstad sought punitive damages, exemplary damages, and damages under federal and state RICO statutes. National then tendered the balance of the policy benefits plus interest, a total of $4893.37, in exchange for a release from further liability. Sougstad declined to release her claims and the litigation proceeded.[2]

National removed the case to federal court and filed an answer denying liability under the insurance policy. Sougstad died on September 12, 1992, and the District Court substituted Maristuen as plaintiff. The case eventually went to trial in two stages.[3] At the conclusion of the first stage on August 31, 1993, the jury awarded Maristuen contract damages of $4128 plus prejudgment interest. The jury also found that National had breached its duty of good faith and awarded bad faith damages in the form of litigation expenses and attorney fees. The jury set the amount of litigation expenses at $31,200 but did not quantify the attorney fees because the parties had agreed prior to the start of the trial that the amount of any attorney fees award would be set by the court. At the conclusion of the second stage, the jury awarded Maristuen punitive damages of $50,000. The court entered judgment on these verdicts on September 7, 1993.

Following the entry of judgment, counsel for both parties submitted evidence, briefs, and arguments to assist the court in quantifying the attorney fees the jury had awarded

---

**2.** National States later tendered the same amount without conditions. The tender was again rejected, and National deposited the funds with the District Court pursuant to Fed.R.Civ.P. 67.

**3.** The District Court dismissed with prejudice the RICO count of the complaint prior to trial. Maristuen has not filed a cross-appeal challenging this ruling.

as part of Maristuen's damages. Maristuen requested fees in an amount exceeding $100,-000. On January 13, 1994, the District Court set the amount of attorney fees at $33,344.42 and amended the September 7, 1993 judgment accordingly.

National made a post-judgment motion that the District Court denied on February 15, 1994. On March 11, 1994, National filed its notice of appeal from the amended judgment of the District Court, arguing that the District Court erred when it (1) awarded excessive attorney fees, (2) refused to reduce the jury's award of bad faith damages in the form of litigation expenses, and (3) refused to vacate or reduce the jury's award of punitive damages.

## II.

■ We must first address Maristuen's motion to dismiss the appeal as untimely filed. Maristuen argues that the appeal is untimely because it was not filed within thirty days "after the date of entry of the judgment or order appealed from." *See* Fed. R.App.P. 4(a)(1). Maristuen contends that the September 7, 1993 judgment was a final decision within the meaning of 28 U.S.C. § 1291 (1988). National contends that it was not, and that the judgment was not final and appealable until it was amended on January 13, 1994, to include the fully quantified amount of bad faith damages.

Section 1291 gives this Court jurisdiction over appeals from "all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court." *Id.* Generally, a final decision within the meaning of § 1291 is one that " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Union Pacific R.R. Co. v. United Transp. Union,* 3 F.3d 255, 258 (8th Cir.1993) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945)), *cert. denied,* —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994). In the instant case, National contends that the September 7, 1993 judgment of the District Court was not a final decision because, while providing for bad faith damages in the form of litigation expenses and attorney fees, it did not set the total amount of those damages, the quantum of attorney fees still being an open item. Maristuen argues that the determination of the attorney fees portion of the bad faith damages is a collateral matter that does not affect the finality of the underlying judgment.

Substantial effort has been expended over the years on answering the question of whether a post-judgment motion for attorney fees precludes a judgment on the merits from becoming final and appealable. When a fee question is pending the district court must do more than simply "execute the judgment," and many litigants reasonably assumed, based on the language in *Catlin,* that a judgment was not final if it did not dispose of a timely demand for attorney fees. This assumption turned out to be erroneous. *See Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 201, 108 S.Ct. 1717, 1721, 100 L.Ed.2d 178 (1988); *Obin v. District No. 9 of the Int'l Ass'n of Machinists & Aerospace Workers,* 651 F.2d 574, 584 (8th Cir.1981) (holding that post-judgment motion for attorney fees "raises a collateral and independent claim" that does not affect the finality of an otherwise final decision on the merits). Although the Supreme Court strongly had hinted that "[t]he collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as 'final' and 'appealable,' " *White v. New Hampshire,* 455 U.S. 445, 452–53 n. 14, 102 S.Ct. 1162, 1167 n. 14, 71 L.Ed.2d 325 (1982), some courts of appeals concluded prior to *Budinich* that a judgment may not be final and appealable if the attorney fees sought were part of the damages claimed by the plaintiff (e.g., the attorney fees paid by an insured to force an insurance company to pay benefits owed to the insured). *See Budinich,* 486 U.S. at 201, 108 S.Ct. at 1721 (citing relevant courts of appeals decisions). After *Budinich,* however, the distinction between attorney fees that form part of the plaintiff's claim for damages and attorney fees that are awarded as costs is largely irrelevant. The Court stated that "the § 1291 effect of an unresolved issue of attorney's fees for the litigation at hand should not turn upon the characterization of those

fees by the statute or decisional law that authorizes them." *Id.* at 201, 108 S.Ct. at 1721. *But see Justine Realty Co. v. American Nat'l Can Co.,* 945 F.2d 1044, 1048 (8th Cir.1991) (distinguishing *Budinich* and holding that attorney fees other than "fees for the litigation at hand" can still form part of merits judgment and thus, if undecided, prevent judgment from becoming final and appealable).

Both Maristuen and National have structured their arguments as if this case were controlled by cases like *Budinich* and *Justine Realty,* but they disagree as to whether the fees awarded by the jury are a part of the judgment on the merits. We do not think that the line of cases culminating in *Budinich* is applicable to this case. In each of those cases, many of which are cited in Maristuen's brief supporting her motion to dismiss, the prevailing party filed a post-judgment motion for attorney fees, regardless of whether such fees were claimed in the complaint, and the district court entered a judgment on the fees issue separate from the previously entered judgment on the merits. *See, e.g., Budinich,* 486 U.S. at 197, 108 S.Ct. at 1719 (stating that final judgment was entered on jury's award to plaintiff of $5000 and that court later entered separate judgment on plaintiff's separate motion for attorney fees); *White,* 455 U.S. at 447–48, 102 S.Ct. at 1164 (stating that district court entered judgment on consent decree and plaintiff filed attorney fees motion more than four months later); *Justine Realty,* 945 F.2d at 1046 (noting that plaintiff filed motion for attorney fees and costs after merits judgment had been entered for defendant); *Obin,* 651 F.2d at 576 (noting that defendant moved for attorney fees after judgment and court entered separate order awarding fees and costs).

This case differs from *Budinich* and the other cases cited above because the award of unquantified attorney fees here is set out in and is an integral part of the judgment entered by the District Court in accordance with the jury's verdicts. The District Court's September 7, 1993 judgment reads as follows:

This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdicts. IT IS ORDERED AND ADJUDGED that Norma Maristuen ... is entitled to benefits under the terms of the insurance policy, and that contract damages be assessed in the amount of $4,128, with prejudgment interest at the rate of 6 percent commencing June 30, 1988.

IT IS FURTHER ORDERED AND ADJUDGED that National States Insurance Company breached the covenant of good faith and fair dealing it owed to Henrietta Sougstad, *and that plaintiff is entitled to bad faith damages in the form of attorney's fees, the amount of which will be determined by the court.*

IT IS FURTHER ORDERED AND ADJUDGED that plaintiff is entitled to bad faith damages in the form of litigation expenses in the amount of $31,200.

The jury further finds, by clear and convincing evidence, that National States Insurance Company's conduct was malicious, oppressive or fraudulent toward the plaintiff and,

IT IS FURTHER ORDERED that exemplary and punitive damages in the amount of $50,000 be assessed against National States Insurance Company and awarded to plaintiff.

IT IS FURTHER ORDERED that interest on the judgment amount shall accrue at the rate of 3.43 percent per annum.

*Maristuen v. National States Ins. Co.,* Civil No. A2–91–155, J. at 1–2 (D.N.D. Sept. 7, 1993) (emphasis added). On January 13, 1994, the clerk of the District Court, acting at the court's direction, amended the September 7, 1993 judgment by typing the following words at the bottom of that document:

Plaintiff recover from deft atty fees in the sum of $33,344.42 and that jdmt prev entered in case be amended to include this award.

*Maristuen v. National States Ins. Co.,* Civil No. A2–91–155, J. at 2 (D.N.D. Sept. 7, 1993), *as amended by* Mem. & Order (D.N.D. Jan. 13, 1994). In *Budinich* and the cases relied upon by Maristuen, the courts had two sepa-

rate judgments before them. Those courts had to decide the effect of the later judgment (awarding or denying attorney fees) on the finality and appealability of the earlier judgment on the merits of the case. Unlike those cases, the District Court in this case entered only one judgment covering both the merits of the case and the attorney fees award. We must decide whether that judgment was final when it was filed on September 7, 1993, or when it was amended on January 13, 1994. Stated in broader terms, the issue is whether a judgment that includes an unquantified damage award, whatever its nature, is a final decision within the meaning of § 1291. The fact that the unquantified damage award consists of attorney fees is, we believe, of no particular significance.

■ To decide the question, we must again consider the Supreme Court's definition of a final decision from *Catlin*: "[a] 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin*, 324 U.S. at 233, 65 S.Ct. at 633–34. The District Court's September 7, 1993 judgment certainly ends the litigation on the merits, but the judgment was not final because it could not have been executed. Far from leaving "nothing for the district court to do but execute the judgment," the District Court still had to decide the total amount of bad faith damages by quantifying the jury's award of attorney fees as an element of those damages. Until the court set the quantum of attorney fees, the final amount of the judgment, on which interest was to accrue at 3.43 percent per annum, was not known. A judgment awarding damages but not deciding the amount of the damages or finding liability but not fixing the extent of the liability is not a final decision within the meaning of § 1291. *See Gates v. Central States Teamsters Pension Fund*, 788 F.2d 1341, 1343 (8th Cir.1986); *Wrist–Rocket Mfg. Co. v. Saunders Archery Co.*, 516 F.2d 846, 848–49 (8th Cir.), *cert. denied*, 423 U.S. 870, 96 S.Ct. 134, 46 L.Ed.2d 100 (1975). The District Court's judgment thus became final and appealable only on January 13, 1994, when the court amended the judgment to include the quantified award of attorney fees

as part of the total amount of bad faith damages.

Our conclusion is supported by Federal Rule of Civil Procedure 58, which requires that "[e]very judgment shall be set forth on a separate document." The District Court in this case did not enter the attorney fees judgment on a separate document. Under Rule 58, there is only one judgment in this case because there is only one document setting forth the entire judgment, including the award of attorney fees in a determined amount. We note that fourteen years ago this Court recommended a practice consistent with the single-document technique employed by the District Court in this case. Acknowledging our concern over the fragmentation of appeals, we suggested that district courts delay entry of a final judgment "pending determination of attorney's fee claims" and later enter "a single final judgment determining all issues." *Obin*, 651 F.2d at 583. Essentially, the District Court did exactly as we suggested in *Obin*. The court avoided the problem of a piecemeal appeal by entering a judgment on September 7 that on its face was not a final decision within the meaning of § 1291. When it amended its judgment after determining the amount of the attorney fees award, the judgment became final and appealable. We approve of this procedure. Whenever possible and practical, we would rather hear and decide an appeal of an attorney fees award at the same time as an appeal on the merits.

To sum up, in all of the cases relied upon by Maristuen, as well as in *Budinich*, the district court addressed attorney fees claims in separate judgments. In each of these cases the judgment entered prior to any determination of the attorney fees question was, on its face, final, and capable of being executed. It was thus appealable. The judgment in this case initially was not final or capable of being executed; the award of attorney fees was an integral part of the court's award of bad faith damages in its judgment on the merits. We hold that the September 7, 1993 judgment was not a final decision within the meaning of § 1291 until January 13, 1994, because one of the ele-

ments of the damages award remained unquantified until that date.

■ Maristuen also argues that in any event the notice of appeal was not timely because it was not filed within thirty days of the January 13, 1994 order as required by Federal Rule of Appellate Procedure 4(a)(1). On January 21, 1994, National filed a motion to, *inter alia*, alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e).[4] Maristuen argues that National's motion was not timely, and thus did not toll the thirty-day time period for filing a notice of appeal from a final judgment, because the motion sought to amend the judgment by vacating the litigation expense award and the punitive damages award, neither of which was the subject of the January 13 order. Maristuen contends that the motion should have been filed within ten days of the September 7, 1993 judgment. We reject her contention. Rule 59(e) states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." A judgment, as defined by the Rules, includes "a decree and any order from which an appeal lies." Fed.R.Civ.P. 54(a). We already have held that the September 7, 1993 judgment was not a final decision within the meaning of § 1291; thus no appeal would lie from it. Accordingly, a motion to amend or alter the judgment would have been premature had it been filed within ten days of September 7, 1993, despite the fact that the January 13 amendment did not affect the portions of the judgment National sought to amend or alter. The Rule 59(e) motion filed on January 21 was timely and, pursuant to Federal Rule of Appellate Procedure 4(a)(4)(C), the time for filing a notice of appeal did not begin to run until the District Court disposed of National's post-judgment motion. The District Court denied National's Rule 59(e) motion on February 15, 1994, and National filed its notice of appeal on March 11, 1994, well within the thirty-day limit prescribed by Rule 4 for filing a notice of appeal. We therefore conclude that National's notice of appeal was timely filed.

## III.

■ We now turn to the merits of the appeal. National first argues that the punitive damages award of $50,000 should have been vacated or reduced by the District Court. The decision to vacate or reduce a punitive damages award is a matter within a trial court's discretion under North Dakota law, *see Smith v. American Family Mut. Ins. Co.*, 294 N.W.2d 751, 765 (N.D.1980), and we thus review the District Court's refusal to alter the jury's award in this case under the deferential abuse-of-discretion standard. The jury specifically found that National had acted in a malicious, oppressive, or fraudulent manner toward Sougstad, the necessary predicate for an award of punitive damages under N.D.Cent.Code § 32–03.2–11 (Michie Supp.1993), and this finding is supported by substantial evidence on the record. The sole question for us, then, is whether the award is excessive. The North Dakota Supreme Court approved a $50,000 punitive damages award in *Smith*, 294 N.W.2d at 766. *Smith*, like this case, involved an insurance company's bad faith denial of coverage. While some of American Family's conduct may have been more egregious than National's conduct, we cannot say that, in the circumstances of this case, the award is excessive.

■ National next challenges the amount of bad faith damages awarded in the form of litigation expenses, as calculated by the jury, and attorney fees, as calculated by the court. We will not reverse a jury's award of damages "except for a manifest abuse of discretion," *Piotrowski v. Southworth Products Corp.*, 15 F.3d 748, 754 (8th Cir.1994), and we review the amount of damages calculated by the District Court, a finding of fact, only for clear error, *see Thomas v. Bakery, Confectionery & Tobacco Workers Int'l Union, Local # 433*, 982 F.2d 1215, 1221 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2961, 125 L.Ed.2d 661 (1993). We are convinced that the amounts of litigation expenses and

---

4. National's motion also referred to Rules 50(b) and 60(b), though the filing clearly was an attempt to persuade the District Court to amend the judgment pursuant to Rule 59(e) by decreasing or eliminating certain portions of the damages awarded to Maristuen, and we so construe the motion.

attorney fees awarded in this case are supported by substantial evidence. Thus the jury award of litigation expenses is not a manifest abuse of discretion, and the court's determination of the quantum of the attorney fees award is not clearly erroneous.

 National's most extensive arguments on appeal address the amount of the attorney fees award. Because Maristuen has not argued to the contrary, we assume without deciding that an attorney fees award in a bad faith action is limited by North Dakota law to the fees attributable to the attorneys' efforts to prove a breach of the insurance contract. *But see Corwin Chrysler–Plymouth v. Westchester Fire Ins. Co.*, 279 N.W.2d 638, 643 (N.D.1979) (" 'if the insurer's tortious [bad faith] conduct makes it reasonable for the insured to seek the protection of counsel, the insurer is responsible for that item of damages' ") (quoting *Mustachio v. Ohio Farmers Ins. Co.*, 44 Cal.App.3d 358, 363–64, 118 Cal. Rptr. 581 (1975)). It does not follow, however, despite National's argument to the contrary, that National's tender of the policy limits prevents Maristuen from recovering any attorney fees incurred after that date. National never admitted liability on the insurance contract, thus forcing Sougstad to prove at trial that National had breached the contract by denying her claim for benefits. Assuming North Dakota law limits the recoverability of attorney fees as noted above, perhaps National could have cut off its liability for attorney fees had it tendered the policy limits and admitted liability under the contract; that, however, is not this case. Sougstad's and Maristuen's attorneys submitted a petition for attorney fees seeking in excess of $100,000. The District Court apportioned the requested attorney fees to the separate claims and found that roughly one-third of the requested fees was attributable to the breach of contract claim. In the circumstances of this case, we cannot say that the court's factual finding is clearly erroneous.

 In sum, National has asked us to reverse discretionary decisions and factual findings of the District Court and the jury that are unquestionably supported by the great weight of the evidence and wholly in conformance with applicable law. Such a meritless appeal is frivolous. *See Rosenburg v. Lincoln American Life Ins. Co.*, 883 F.2d 1328, 1339–40 (7th Cir.1989). Pursuant to Federal Rule of Appellate Procedure 38, we award Maristuen damages in the form of her attorney fees attributable to this appeal and double costs.

### IV.

For the reasons stated, the judgment of the District Court is affirmed, and Maristuen is awarded damages and double costs.