# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3164

_____

| | | |
|---|---|---|
| Auto Services Company, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| KPMG, LLP; KPMG Consulting, LLC; | * | |
| Milliman, Inc., | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Deloitte - Cayman Islands; | * | |
| Deloitte & Touche USA, LLP; | * | Appeal from the United States |
| Deloitte & Touche, LLP; Deloitte | * | District Court for the |
| Consulting, LLP, | * | District of Nebraska. |
| | * | |
| Defendants - Appellees, | * | |
| | * | |
| Berkley Insurance, Company; | * | |
| American Safety Insurance Services; | * | |
| American Safety Reinsurance Ltd.; | * | |
| Donald Erway; Dennis Costin; Rex | * | |
| Moats; Cayman Islands Firm of | * | |
| Deloitte & Touche; Winterbrook Re | * | |
| Intermediaries, LLC, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: May 14, 2008
Filed: August 8. 2008

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.
_____

BOWMAN, Circuit Judge.

Auto Services Company, Inc., ("ASC") appeals the District Court's dismissal of its claims against Deloitte-Cayman Islands; Deloitte & Touche, USA, LLP; Deloitte & Touche, LLP; and Deloitte Consulting, LLP (collectively, "the Deloitte entities"), and the court's denial of its motion to reconsider the dismissal. We affirm.

On June 3, 2005, ASC, an Arkansas corporation engaged in marketing vehicle warranties, filed a lawsuit against the Deloitte entities and the other defendants. ASC asserted professional-negligence claims against the Deloitte entities in the preparation of financial documents for National Warranty Insurance Risk Retention Group ("National Warranty"), a Cayman Islands company headquartered in Nebraska that provided vehicle-warranty insurance to its members, including ASC. National Warranty initiated liquidation proceedings in 2003 and thereafter ceased providing contracted-for insurance coverage for ASC's vehicle warranties. According to ASC's complaint, the 1998 through 2001 financial reports, audits, and actuarial opinions ("audit reports") prepared by the Deloitte entities for National Warranty and provided to ASC as a National Warranty group member contained material misrepresentations and omissions, understated National Warranty's liabilities, and ultimately caused ASC to incur losses when National Warranty ceased performing its obligations under the vehicle-warranty insurance contracts.

On December 12, 2006, the District Court dismissed ASC's claims against the Deloitte entities, concluding that those claims were barred by Nebraska's two-year statute of limitations on professional-negligence actions. The case against the other defendants, however, continued. On June 29, 2007, the District Court entered a "Consent Final Judgment and Order" dismissing ASC's claims against KPMG, LLP, the last defendant remaining in the lawsuit.

On July 13, 2007, ASC filed a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure requesting that the District Court reconsider its December 12, 2006, dismissal of ASC's claims against the Deloitte entities. Specifically, ASC argued that issues of fact remained and that the court erred by concluding as a matter of law that Nebraska's two-year statute of limitations on professional-negligence actions barred ASC's claims against the Deloitte entities. On August 16, 2007, the District Court entered an order denying as untimely ASC's motion for reconsideration. Citing a local rule requiring that "a motion for reconsideration of an order [be filed] no later than ten (10) business days after the court files the order," NECivR 60.1(b), the District Court concluded that ASC's right to seek reconsideration of the December 12, 2006, dismissal order had expired. On September 14, 2007, ASC filed its notice of appeal, asserting that the District Court erred by denying its motion to reconsider as untimely under the local rules and by dismissing its underlying claims against the Deloitte entities as untimely under Nebraska's professional-negligence statute of limitations.

A "motion for reconsideration" is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment. See, e.g., Sanders v. Clemco Indus., 862 F.2d 161, 168 (8th Cir. 1988). Here, because ASC identified Rule 59(e) as the operative authority and called into question the correctness of the District Court's judgment, we will treat the motion as one to alter or amend the judgment under Rule 59(e). See Norman v. Ark. Dep't of Educ., 79 F.3d 748, 750 (8th Cir. 1996). We review the District Court's denial of the motion for abuse of discretion. See id.

A motion to alter or amend the judgment must be served no later than ten days after the entry of "the judgment," Fed. R. Civ. P. 59(e), and, if timely filed, tolls the time in which to file a notice of appeal until the district court disposes of the motion, Fed. R. App. P. 4(a)(4)(A)(iv). For purposes of the Federal Rules of Civil Procedure,

"judgment" is defined to "include[] a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Thus, "judgment" encompasses both a final judgment and an appealable interlocutory order. "Judgment" does not, however, encompass an order dismissing fewer than all of the opposing parties or claims unless the district court directs the entry of final judgment under Rule 54(b), or expressly indicates that the order is an immediately appealable interlocutory decision under 28 U.S.C. § 1292(b). Wagner v. Farmers & Merchs. State Bank, 787 F.2d 444, 445 (8th Cir. 1986) (per curiam). Because an order dismissing fewer than all claims or parties is generally not a final judgment, a Rule 59(e) motion to challenge such an order may only be filed after the district court enters the final judgment. Maristuen v. Nat'l States Ins. Co., 57 F.3d 673, 679 (8th Cir. 1995) (reasoning that a Rule 59(e) motion "would have been premature had it been filed within ten days of" an order that was not a final judgment); Barton v. Columbia Mut. Cas. Ins. Co., 930 F.2d 1337, 1338 n.2 (8th Cir. 1991) (noting that the district court's judgment denying a motion for a new trial and disposing of all remaining claims "effectively terminated the controversy," thus rendering final a "previously interlocutory . . . [o]rder dismissing plaintiffs' unrelated claims").

Here, the District Court's December 12, 2006, order dismissing ASC's claims against the Deloitte entities was not a final judgment because it dismissed fewer than all of the claims asserted in ASC's lawsuit. See Chambers v. City of Fordyce, Ark., 508 F.3d 878, 880 (8th Cir. 2007) (per curiam) (noting that an order dismissing fewer than all claims or defendants is only final after judgment is entered); Missouri ex rel. Nixon v. Coeur D'Alene Tribe, 164 F.3d 1102, 1105 (8th Cir.) (observing that an order dismissing all claims against one defendant was not final when entered because other defendants remained), cert. denied, 527 U.S. 1039 (1999); Bullock v. Baptist Mem'l Hosp., 817 F.2d 58, 59 (8th Cir. 1987) (holding that an order dismissing the complaint as to fewer than all defendants is not a final judgment). And the District Court did not direct the entry of final judgment under Rule 54(b) or indicate that the order was an immediately appealable interlocutory decision under § 1292(b). Not

-4-

until June 29, 2007, when the District Court entered its "Consent Final Judgment and Order" dismissing the claims against the last remaining defendant, was the final judgment entered and the lawsuit effectively terminated. Only then could ASC file a Rule 59(e) motion to alter or amend the judgment—including the December 12, 2006, dismissal order and the other orders previously entered in the case. See Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999) ("Rule 59(e) motions are motions to alter or amend a *judgment*, not any nonfinal order."); Maristuen, 57 F.3d at 679; Barton, 930 F.2d at 1338–39 n.2; Anderson v. Deere & Co., 852 F.2d 1244, 1246 (10th Cir. 1988) (concluding that earlier interlocutory orders dismissing certain defendants "merged" with judgment dismissing last defendant for purposes of finality). Had ASC elected to seek reconsideration of the dismissal order before final judgment was entered, it could have filed a motion to reconsider pursuant to the local rule cited by the District Court. See NECivR 60.1(b). Or ASC could have moved the District Court to exercise its general discretionary authority to review and revise its interlocutory rulings prior to the entry of final judgment. See Fed. R. Civ. P. 54(b); Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 100 (1954) (observing that "[t]he power remained in the trial court until the entry of his final judgment to set aside, for appropriate reasons," orders previously entered in the case); Interstate Power Co. v. Kansas City Power & Light Co., 992 F.2d 804, 807 (8th Cir. 1993) ("Under the last clause of Rule 54(b), a non-final order 'is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.'").

The District Court denied ASC's motion to reconsider based on a local rule stating that "[a] party must file a motion for reconsideration of an order no later than ten (10) business days after the court files the order." NECivR 60.1(b). As we have concluded, however, ASC's motion to reconsider was timely filed pursuant to Rule 59(e), which "expressly authorizes the filing of motions to alter or amend a judgment. Litigants have a right . . . to file such motions." Dubose v. Kelly, 187 F.3d 999, 1002 n.1 (8th Cir. 1999). While the local rule cited by the District Court may apply to

motions for reconsideration of a court's interlocutory rulings, "[w]e doubt that the local rule was intended to apply to post-judgment motions filed within the time limit prescribed in" Rule 59(e). Id. (construing a Minnesota local rule governing motions to reconsider); see Fed. R. Civ. P. 83 (instructing that district courts may adopt local rules not inconsistent with the federal rules). In sum, we conclude that the District Court abused its discretion by denying as untimely under a local rule ASC's motion for reconsideration filed pursuant to Rule 59(e).[1]

This does not end the matter, however. Although the District Court abused its discretion by denying ASC's Rule 59(e) motion as untimely under a local rule, we conclude that this error was harmless because the court did not err in dismissing the underlying professional-negligence claims against the Deloitte entities. See Anderson, 852 F.2d at 1246 (concluding that the district court's erroneous ruling on the timeliness of a Rule 59(e) motion was harmless error); cf. Rodriguez-Antuna v. Chase Manhattan Bank Corp., 871 F.2d 1, 3 (1st Cir. 1989) (holding that erroneous treatment of a rule 59(e) motion was harmless because there was no valid basis for relief in any event).

The District Court dismissed ASC's claims against the Deloitte entities as time-barred under Nebraska's two-year statute of limitations for professional-negligence actions. Neb. Rev. Stat. § 25-222.[2] This section provides that "[a]ny action to recover damages based on alleged professional negligence . . . shall be commenced within two years next after the alleged act or omission in rendering or failure to render

---

[1]Because ASC timely filed its Rule 59(e) motion to alter or amend the judgment (including the previously interlocutory order dismissing the Deloitte entities), the time for ASC to file its notice of appeal began to run on August 16, 2007, the date on which the District Court disposed of the Rule 59(e) motion. Fed. R. App. P. 4(a)(4)(A)(iv). ASC's notice of appeal, filed on September 14, 2007, was timely and preserved for our consideration the underlying dismissal order.

[2]The parties agree that Nebraska Revised Statutes section 25-222 applies.

professional services providing the basis for such action." Id. The two-year limitations period "begins to run as soon as the cause of action accrues." Berntsen v. Coopers & Lybrand, 546 N.W.2d 310, 315 (Neb. 1996). With respect to a claim alleging professional negligence against an auditor, the cause of action accrues, and the two-year statute of limitations begins to run, on the date the audit report is delivered to the client. World Radio Labs., Inc. v. Coopers & Lybrand, 557 N.W.2d 1, 10 (Neb. 1996).

The two-year limitations period may be extended, however, "if facts constituting the basis of the malpractice action are not discovered and could not reasonably be discovered within 2 years of the alleged negligent conduct." Id. In such a case, section 25-222's discovery exception permits "a malpractice action to be brought within 1 year from the date of discovery or within 1 year from the date the plaintiff acquires facts that would lead to such discovery." Id. Discovery "occurs when the party knows of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the cause of action." Gering-Fort Laramie Irrigation Dist. v. Baker, 612 N.W.2d 897, 903 (Neb. 2000); see Weaver v. Cheung, 576 N.W.2d 773, 778 (Neb. 1998) ("In the context of statutes of limitations, 'discovery' refers to the fact that one knows of the existence of an injury or damage, regardless of whether there is awareness of a legal right to seek redress in court."). If a plaintiff discovers its cause of action at *any time* within the two-year limitations period, however, the one-year discovery exception does not apply. Carruth v. State, 712 N.W.2d 575, 580 (Neb. 2006); Egan v. Stoler, 653 N.W.2d 855, 860 (Neb. 2002) ("[T]he 2-year statute of limitations is applicable notwithstanding the fact that the plaintiff may not discover the cause of action until shortly before the expiration of the time period.").

Here, ASC asserted claims of professional negligence against the Deloitte entities in the preparation of audit reports for National Warranty for the years 1998 through 2001. Attached as Exhibit 2 to ASC's amended complaint was a letter from

the Deloitte entities dated February 11, 2002, transmitting the National Warranty audit reports for the years ending December 31, 2000, and December 31, 2001. Based on the date of the letter, the District Court reasoned that the 2001 audit report (and the audit reports for all preceding years) would have been delivered to ASC no later than "late February or early March 2002." Order of Dec. 12, 2006, at 7.[3] Any potential claims against the Deloitte entities related to the 2001 (or earlier) audit reports accrued—and the two-year statute of limitations began to run—no later than March 2002, the latest date on which the audit reports would have been delivered. See World Radio Labs., Inc., 557 N.W.2d at 10. ASC did not file its complaint, however, until June 3, 2005, roughly fifteen months after the two-year limitations period had lapsed. The District Court did not err in concluding that ASC's professional-negligence action against the Deloitte entities was time-barred.

ASC argues that because it could not have discovered the Deloitte entities' alleged negligence until "shortly before this lawsuit was filed," section 25-222's one-year discovery exception applies. Amended Complaint ¶ 77. Like the District Court, we find this argument unavailing. In its amended complaint, ASC acknowledged that National Warranty initiated liquidation proceedings on June 4, 2003, and averred that National Warranty ceased performing under its vehicle-warranty insurance contracts with ASC at that time. Id. ¶¶ 18, 19. ASC further alleged that National Warranty's failure to perform under the contracts resulted in damages in excess of $10,000,000. Id. ¶ 19 ("ASC has paid for repair costs out of its own pocket . . . ."). This information was "sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the knowledge of facts constituting the basis of the

_____

[3]Although ASC asserts that the dates on which the 1998 and 1999 audit reports were delivered "cannot be determined from the Amended Complaint," Br. of ASC at 65, ASC does not suggest that the 1998 and 1999 audit reports were delivered *after* the reports for the years 2000 and 2001. The District Court did not clearly err in finding that the 1998 and 1999 audit reports were delivered before the 2000 and 2001 audit reports.

-8-

cause of action." <u>Gering-Fort Laramie Irrigation Dist.</u>, 612 N.W.2d at 903. By its own admission, ASC knew or should have known of its professional-negligence action against the Deloitte entities when, in June 2003, National Warranty filed for liquidation and ceased paying claims on its insurance contracts. <u>See</u> <u>Reinke Mfg. Co. v. Hayes</u>, 590 N.W.2d 380, 390 (Neb. 1999) (noting that "[i]t is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem exists"). And because ASC knew or should have known of its negligence action against the Deloitte entities within two years of the March 2002 delivery of the audit reports, the time for filing its claims against the Deloitte entities was not tolled by the discovery exception. Moreover, even if the one-year discovery exception were applicable, ASC's complaint would nevertheless be time-barred because it was filed on June 4, 2005, more than one year after the June 3, 2003, discovery date.

Accordingly, we affirm the judgment of the District Court.

_____